UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HAYTHAMANI MOHAMED HASSAN, | Case No. 2:22-cv-01345-RSM |
| Plaintiff, | |
| v. | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| THE BOEING COMPANY, a Delaware corporation, | |
| Defendant. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendant the Boeing Company's Motion for Summary Judgment, Dkt. #66. Plaintiff Haytham Mohamed Hassan has filed a Response brief. Dkt. #81.[1] The Court finds that it can rule without the need of oral argument. For the reasons below, the Court GRANTS this Motion and dismisses Plaintiff's claims.

## II.  BACKGROUND

Plaintiff Hassan was employed by Defendant Boeing from July 2011 to July 2020 as an engineer in various departments. Dkt. #5 at ¶¶ 8–9; 16–17.

In 2015, Plaintiff took a vacation for his wedding and honeymoon. *Id.* at ¶ 11; Dkt. #67-1 ("Hassan Dep."), 41:4–5. The wedding was in his native Sudan and the honeymoon in Southeast

---

[1] Plaintiff's original response brief was overlength; this amended Response was filed to comply with the word count limit and was untimely by a couple hours. *See* Dkts. #75 and #81. Boeing has moved to strike the amended Response. Dkt. #84 at 2. The Court understands Boeing's frustrations with these and other procedural errors but finds that Boeing was not materially prejudiced. The Court will consider Plaintiff's amended, untimely briefing and supporting documents.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 1

Asia. Dkt. #83 ("Hassan Decl."), ¶¶ 5–6. During the honeymoon, Mr. Hassan started feeling ill, with a fever and chills, and flew back to Sudan early to return his Sudanese wife to her family. Hassan Decl. at 41:13–42:23. In Sudan he fell into a coma. After 19 days of this, he was airlifted to Paris, where he stayed in a coma for 50 days. *Id*. at 43:11–44:11. Mr. Hassan then woke up, could walk, and was sent to a hospital in Seattle where he spent a couple of weeks. *Id*. at 46-47. This was around Christmastime 2015. *Id.* at 46:21.

Doctors in Seattle determined he had an aspergillosis fungal infection. *Id*. at 47:9–13. Antibiotic treatments did not work. Over time, Mr. Hassan had three spinal surgeries and became paraplegic. *Id*. at 48:13–18. Around April or May of 2016, a doctor told him he had six months to live. *Id.* at 49:2. His wife divorced him. *Id.* at 49:17–24.

Mr. Hassan did not die.

Instead, he remained on medical leave for two years, bouncing around various rehabilitation centers. Although he was technically still employed, there was little communication between Mr. Hassan and his employer. He did not talk with his managers or supervisors. *See id*. at 94:8–13. It seems HR never spoke with him, either. *Id*. at 94:2–95:7. On February 22, 2018, Mr. Hassan received a phone call from Boeing HR, out of the blue, saying they were "getting ready to type up [Mr. Hassan's] termination letter." Hassan Decl. at ¶ 34. When he said wait a second, he would like to return to work, he was given a nearly immediate return-to-work date of February 26, 2018—four days later. *Id*. at ¶ 36.

His ability to work was hit-and-miss. He missed two days in his first week and was hospitalized the next week for ten days. Dkt.#5, ¶12; Hassan Dep. at 69:12-71:10; Dkt. #73 ("Semones Decl."), ¶2, Ex. A at 79.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 2

His time at Boeing was repeatedly interrupted by health issues. Mr. Hassan was hospitalized or otherwise on medical leave because of pressure wounds or urinary tract infections in March and October 2018, February and March 2019, and then continuously from October 2019 through April 2020. Semones Decl., Ex. A at 8, 13, 17, 38; Dkt. #67-3 ("Ro Dep."), 63:3-64:6; Dkt. #67-2 ("Shenoy Dep."), 135:9-11.

Even when he could work, his medical condition affected his ability to do certain jobs. As a "Seats" engineer from 2011 to 2015, it is undisputed that Mr. Hassan was responsible for inspecting airplane seats "in various stages of the development and installation process," a position whose essential functions included the physical ability to "bend crawl, stoop, kneel, sit in the seats, remove the life jacket from under the seat, inspect seat track, etc." Hassan Dep. at 146:2-147:13; Dkt. #5 ¶¶17-18; Semones Decl., Ex. A at 79. After the illness, Mr. Hassan was confined to a wheelchair and unable to do most of these things. Boeing and Mr. Hassan thus began the interactive process to determine reasonable accommodations.[2]

One reasonable accommodation was working remotely/virtually. In June of 2018, Boeing transferred Mr. Hassan to its "Flammability" engineering group to perform computer-based engineering reviews of flammability data. Semones Decl., Ex. A at 58; Ex. C, ¶4. Boeing later transferred Mr. Hassan to its "Affordability" engineering group, at his request. Semones Decl., Ex. A at 21-22; Hassan Dep. at 154:8-25; Dkt. #67-4 ("Ellis Dep.") at 42:10-19. From November 2018 onward, Plaintiff worked a hybrid schedule of three days virtual, two days on-site, later four days

---

[2] Washington State case law and statutory law require employers to engage in an "interactive process" to determine reasonable accommodations. *See* RCW 49.60.040(7)(d); *Frisino v. Seattle School District No. 1*, 160 Wn. App. 765, 249 P.3d 1044, 1050 (2011) ("Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible, interactive process.").

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 3

virtual, with additional virtual days as necessary. Hassan Dep. at 276:23-278:2; Semones Decl., Ex. A at 7, 39, 43-44.

The interactive process was not without its disputes, many of which are detailed in briefing but are ultimately irrelevant for the Court's analysis, either because they were resolved by Boeing or because they occurred outside the time period at issue in this case.

After returning from a medical leave from October 2019 through April 2020, and due to the dissolution of the Affordability team, Plaintiff was transferred to the "Galley Inserts" engineering team for the last few months of his employment, where he worked 100% remote until his July 31, 2020, layoff. Dkt. #5, ¶42; Ellis Dep. 32:5-33:16; Semones Decl., Ex. A at 13; Hassan Dep. at 89:11–90:2; 276:23–278:2.

It is undisputed that Boeing's layoffs in 2020 were caused by either the COVID pandemic, the grounding of its 737MAX aircraft, or both. *See* Hassan Dep. 90:12-91:24. Plaintiff survived the first two rounds of layoffs but was swept up in the third. *Id*. Plaintiff was one of more than 13,000 employees involuntarily laid off. *Id*.; Dkt. #70 ("Highfill Decl."), ¶6.

Two years passed.

Mr. Hassan filed this action in King County Superior Court on August 16, 2022. Dkt. #1-3. It was removed here on September 23, 2022. Dkt. #1. In the Amended Complaint, Plaintiff brings causes of action for "failure to accommodate in violation of state law" and "discriminatory and/or retaliatory wrongful termination." Dkt. #5 at 5–6.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 4

56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. Analysis

#### 1. Retaliation Claim

Boeing's position is that Mr. Hassan has explicitly abandoned his retaliation claim. Dkt. #66 at 13 (citing Hassan Dep. at 207:13-16). Mr. Hassan does not respond to this argument.

The Court has reviewed the unambiguous deposition testimony and the briefing and concludes that this claim is no longer being pursued and that dismissal is warranted.

#### 2. Statute of Limitations on Failure to Accommodate Claims

The statute of limitations on a failure to accommodate claim under the Washington Law Against Discrimination is three years. *Wade v. Premera Blue Cross*, No. CV-10-217-RMP, 2012 WL 12790, at *10 (E.D. Wash. Jan. 4, 2012) (citing RCW 4.16.080(2)). For statute of limitation

purposes, a failure to accommodate claim "accrues when the employer makes the decision not to accommodate the employee's [disability] and that decision is communicated to the employee." *Id.* (quoting *Hinman v. Yakima School Dist. No. 7*, 69 Wn. App. 445, 449–50, 850 P.2d 536 (1993)).

Boeing disputes the substance of Mr. Hassan's failure to accommodate claims but first argues that all of its alleged failures to accommodate occurred prior to August 2019 and are thus time-barred. *See* Dkt. #66 at 13–14. The Court has reviewed the evidence cited by the parties and agrees that all alleged incidents of failure to accommodate occurred prior to August 2019.

The briefing from Mr. Hassan leaves no doubt in the Court's mind. In the response brief, Mr. Hassan says "As of 3/1/18, the requested accommodation was conveyed to Boeing that Haytham should work virtually 3 days a week, and that virtual work was vital to his health. [Citation] Boeing cannot deny receiving these accommodation requests but yet still failed to affirmatively adopt them in 2018 and the first half of 2019." Dkt. #81 at 12. This allegation refers to claims that cannot be brought under the above law, as they are untimely.[3] Mr. Hassan does not point to anything that occurred in the second half of 2019 or later that could be construed as a failure to accommodate.[4]

Mr. Hassan seems to know this, as his briefing responds to Boeing's timeliness arguments by referring to the "continuing violation doctrine." Dkt. #81 at 23–24.

The continuing violation doctrine allows a plaintiff to seek relief for the cumulative effects of repeated conduct that began outside the limitations period and continued into the limitations

---

[3] The Court also notes that Plaintiff is making a point about a period of frustration in the interactive process that was apparently resolved, as Mr. Hassan was ultimately allowed to do virtual work three or more days a week.

[4] Plaintiff mistakenly indicates that a virtual work accommodation was provided in "November of 2019." Dkt. #81 at 17. The record clearly shows it was granted in November 2018. *See* Hassan Dep. at 277:9–12. In his deposition, Plaintiff points to Boeing's failure to provide him with "leg elevation" but does not explain when he requested this accommodation or when Boeing denied it. *See id.* at 278:3–79:21. Ultimately, the undisputed facts cannot support a claim of failure to accommodate this request within the time period allowed by the statute of limitations. *See* Dkt. #66 at 18–19.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 6

period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-21, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). The doctrine, however, does not apply to discrete acts that are time-barred, even when they relate to acts within the limitations period. *Id*. at 113. The doctrine also does not apply to the continuing impact from a wrongful act outside the limitations period. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).

"A failure to accommodate is itself a discrete act." *Hall v. Fluor Hanford, Inc.*, 2009 U.S. Dist. LEXIS 134854, *5 (E.D. Wash., June 1, 2009).

Given the above law, the Court agrees with Boeing's analysis and finds that all of Boeing's alleged failures to accommodate, *i.e.*, everything that could support this claim, occurred prior to August 2019, and therefore Plaintiff's failure to accommodate claim is entirely barred by the statute of limitations.

Mr. Hassan appears to argue two other theories to get around this timeliness problem: that Boeing had "a systemic discriminatory policy," and that "with the involuntary transfer to a new department, Plaintiff lost his favorable retention rating which did not result in his termination until August 1, 2020." Dkt. #81 at 24. These arguments are made in one or two sentences without any significant analysis or explanation. Mr. Hassan presents no evidence of a systemic discriminatory policy in briefing. Instead, he cites to a declaration of Dr. Ananth Shenoy that merely describes what happened to Mr. Hassan, not a *systemic* policy. *See* Dkt. #78 ("Second Shenoy Decl.," ¶ 11). Mr. Hassan must, as the nonmoving party, make a "sufficient showing on an essential element of [his] case with respect to which []he has the burden of proof" to survive summary judgment. *Celotex Corp., supra*. Furthermore, losing his favorable retention rating resulting in his termination is more properly addressed below under his wrongful termination claim, not his failure to accommodate

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 7

claim. Accordingly, summary judgment dismissal of this claim is warranted. The Court need not address the reasonableness of Boeing's various accommodations.

### 3. Wrongful Termination

Mr. Hassan's last claim is for wrongful termination based on discrimination. This claim is timely.

Because there will rarely be direct evidence of discrimination, WLAD discrimination claims such as this one are often considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Mikkelsen v. Public Util. Dist. No. 1 of Kittitas County*, 189 Wn.2d 516, 404 P.3d 464, 470-71 (2017) (applying *McDonnell Douglas* framework to claims under the WLAD). Under this three-prong test, (1) Plaintiff must "bear the initial burden of establishing a prima facie case of discrimination;" (2) Defendant then must "articulate a legitimate, nondiscriminatory reason for the adverse employment action;" and (3) Plaintiff must then "produce sufficient evidence that Defendant's alleged nondiscriminatory reason [. . .] was a pretext." *Goepfert v. UPS*, 2024 U.S. Dist. LEXIS 117958, *12 (E.D. Wash. July 3, 2024) (citing *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 445-46, 334 P.3d 541 (2014)). Even if an employer's stated reason is legitimate, Plaintiff can still prove pretext if the discriminatory reason "was a substantial factor motivating the employer." *Id*. at 447.

Here, a prima facie case has four elements: (1) the employee is disabled; (2) the employee is doing satisfactory work; (3) the employee suffered an adverse employment action; and (4) the employee was discharged under circumstances that raise a reasonable inference of unlawful discrimination. *McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1097-1098 (W.D. Wash. 2017) (citing *Callahan v. Walla Walla Housing Auth.*, 126 Wn. App. 812, 110 P.3d 782, 786 (Wash. App. 2005)). The first three elements of Plaintiff's prima facie case are not contested by Boeing. The

fourth element is extremely weak for Plaintiff—he essentially points to Boeing's struggles to accommodate his disability and a statement in a deposition that a manager would not hypothetically hire him for Seats now because he cannot perform the essential functions of the job on that team. *See* Dkt. #81 at 20–22.

Even assuming a prima facie case, Boeing presents substantial evidence and argument that Mr. Hassan was laid off as one among thousands of engineers due to either COVID-19, the 737MAX debacle, or both. This is a textbook example of a legitimate, nondiscriminatory reason for the adverse employment action. Mr. Hassan thus has the burden of producing sufficient evidence that this alleged nondiscriminatory reason was a pretext.

Mr. Hassan's evidence of pretext is not clearly laid out and ultimately an accusation that Boeing failed to accommodate him prior to August 2019 by failing to keep him on Seats, where he speculates he would not have been laid off because of his retention rating. *See* Dkt. #81 at 22–23. No evidence is presented that Mr. Hassan's retention rating change was done contrary to Boeing policy or due to discriminatory animus. Boeing adequately argues that Mr. Hassan's claims of pretext lack evidence and are speculative. *See* Dkt. #66 at 22–24.

Mr. Hassan alternatively argues there is direct evidence of discrimination by pointing to the same statement in a deposition that a manager would not hire him for Seats because he cannot perform the essential functions of the job on that team. The Court finds that this statement cannot constitute direct evidence of discrimination as a matter of law because there is no dispute that Mr. Hassan could not perform those functions and that they were essential, and there is no evidence of discriminatory animus.

//

//

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 9

## IV. CONCLUSION

Having considered the briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant's Motion for Summary Judgment, Dkt. #66, is GRANTED. Plaintiff's claims are DISMISSED. All pending Motions are STRICKEN. This case is CLOSED.

DATED this 8th day of April, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT - 10